080 Affinity Labs of Texas v. Amazon.com Good morning again, Your Honor. So in the 085 patent, the inventors have claimed a new media management system, including a library of personalized content and a customized user interface so that users could access their content and add to it on the go using an application provided for execution on a wireless device. Now Amazon spends much of its brief hurling the accusation that Affinity's patent is merely aspirational and that Russell White didn't invent anything, leaving the inventions for others to make in the future. Now for starters, that attack belongs under Sections 102, 103, and 112, not 101. But more to the point, it shows that while the claimed media management system may be constructed based largely on existing underlying technology, which is detailed in the spec, it is not an abstraction. It is a real system that others did implement much later than 2000, like Amazon did with its cloud music player in 2011. Let me take you back to where I was in the other case, which is the internet patents case. And there we held that the idea of retaining information in the navigation of online forms was abstract. How is this Claim 14 different than that? Yes, Your Honor. Again, in that claim, looking at that case and others, there seems to be a category forming around methods of organizing human activity. And so there, it's just a matter of storing data in your forms. This claim is very different than that. This claim has many elements, including you have to have a, where am I here, a login. The application has to be stored, again, available for the, just like the other case, available for the handheld cellular device. It has to provide a customized GUI, customized graphical user logs to your, or purchase media to add to your library. And then you can access that library remotely. So all of those are technical limitations, much narrower than the supposed abstract idea of just playing content on a wireless device that the District Court and Amazon merged. Just, if I can back up just a little bit, what claims in the 085 patent are actually at issue in this case? All of them, Your Honor. You asserted all of the claims? We are at the pleading stage, so I don't think we have any. So you didn't assert any specific claims, and they answered that all of the claims are invalid or unpatentable subject matter under 101? Yes, that's right. Okay. And of course, it's It seems odd, because some of the claims obviously don't cover the same technology as others, some of the independent claims in particular, but you say that they're all in play. Amazon moved on the pleadings under 12C to invalidate all the claims. Right, but you had not previously identified specific claims as being infringed. Right. Okay. We did allege certain things were, that Amazon's cloud player does have certain things, and they denied, they've admitted, for instance, that it has a user interface, but denied that it's the customized user interface as claimed. So that is on the pleadings, and goes to show that they think they don't infringe, they think these claims have meaningful limitations, they probably have a secret claim construction or view of claim scope that they want to try out later for non-infringement purposes. Well, on that point, though, I mean, the District Court characterized Claim 14 as representative of the other claims. Where did she or he get that? I mean, did the parties agree? Was there any pushback that this was a representative claim? We certainly did not agree. What happened was we were asked for a representative claim in the earlier case, and it was stipulated that it would be Claim 1 in that case. In this case, we were not granted a hearing, and the Court simply rendered its decision and focused on Claim 14. But did you make any arguments with respect to any other claim? Anything that's different from any other claims than 14, did you make any particular arguments that would go to those claims that would necessarily go to Claim 14? I think so, Your Honor. I think the other independent claims have different elements that are not present in Claim 14. No, but did you make, is there any record site you can give me to run those arguments, where those arguments are contained? In our briefing, Your Honor? Yes. I mean, in our briefing, I would cite to page, if I can find it, I'll get back to you on the exact page, but I think we have pointed out there's differences between independent claims, and certainly pointed out the dependent claims. And if I jump to that now, it's actually a very good example of what's happened here. Dependent claims often get short shrift, and in this case, if we look at Claim 15, 15 improves on 14, and says where the network-based delivery resource is configured to recognize that the request indicates a need for wireless delivery of the content, and then to respond to the request by delivering the portion of the content at a given communication rate. Now, those are technological limitations. They're not abstract, and they add to the inventive concept. This is particularly true given here there's no evidence of anyone in the prior art recognizing the need for wireless delivery and sending at a given rate. Now, the district court just said, just dumbed this down to, oh, this is just sending and receiving information over a network, and cited the BuySafe case for that, but that's not what this claim says. We're entitled to a fair process here that actually, where it's Amazon's burden to prove this on the pleadings, clearly convincing evidence for underlying fact issues, and we're dealing with technological limitations, it's not a fair process. So if I move back to Step 1 briefly, it's a lot of the same errors, this idea of coming up with a broad purpose that ignores the claim elements, and then moving on to Step 2. And we've laid this challenge down to Amazon in our briefing as to how this test can ever be applied and not swallow the exception, or swallow all the patent law, as the Supreme Court has cautioned against. And they've provided no limit on how high a level of generality you can state for your abstract idea, and no definition of what makes anything abstract. The argument just seems to be that, well, if there's any breadth to the claims, somehow a broad idea makes it abstract. But I submit, if you claim a system for personal transportation comprising a car, that is extremely broad, no question, but it's not abstract. The car is not abstract. And that's what you have here, I think, a lot of times is people mistaking breadth for abstractness, especially when you ignore the claim elements and devise some super high level purpose for the claims. These claims are, again, they don't fit in any of the prior categories of fundamental economic concepts, math, methods of organizing human activity. They're tangible, just like transistor radios are tangible, the claim media management system is tangible. So moving on to step two, the court below, again, erred by applying a technological arts test, and then really erred. The biggest error in step two is failing to look at these claims as an ordered combination. And so I want to address that in particular. Individually, you know, the court just, again, dumbed down some of the claim elements to say GUIs were known without saying the particular interface that's claimed and described was known, just uses a shorthand for that. But after going through each of the elements individually, the court just concludes for all the independent claims and all the dependent claims that the ordered combination is routine and unconventional, with no analysis whatsoever. And the Bascom case, again, clearly refutes your ability to do that. The district court has to have done some quasi-103 analysis without explaining what it is as part of 101, and you just can't do that, and you certainly can't do it on the pleadings. And we have, again, here, I'd like to point to our expert declaration we put again of Dr. Almaroff. The magistrate struck that in a footnote, saying that there are no factual issues present. But what that declaration says is that, well, the point is you just can't use hindsight on this stuff. We have to pick a point in time, in the years 2000, and ask what's routine and conventional at that time. Now, at the time in that declaration, it says that Diamond Rio was the first portable music player, MP3 player. That was released in just 98. It had no graphical user interface, no streaming media at all. So it was not routine and conventional by 2000. And that declaration goes on to explain that the iPod, which still did not have the claimed features in any way, came out after the invention. And the iTunes Store came out after the invention. And the App Store in 2008, and Amazon's cloud music player in 2011. And after that analysis, the expert concludes there's no way to say that the order combination here was routine and conventional as of 2000. That's in paragraph 14 of the declaration. So that question of what's routine and conventional, looking at these claims, if you consider that declaration, which I submit you should in a fair process, it should be undisputed that these claims and claim elements and the order combination is not routine and conventional. Moving to preemption. The declaration not to include the ultimate legal issues in the case. Well, as I try to step through, it goes through a history lesson of what actually existed before and what actually existed after, and then comes to the conclusion. And again, I would say if we had a full case and more time and not just two weeks to respond to a motion to dismiss on a plea, we probably would have a longer expert declaration. But that's what we had. The expert does specifically explain on this one that there were two problems that were solved. At the time, you could either stream on your home computer or you could listen to a CD or something else like that in a portable player. This allows you to have a remote personalized library that you can access, that you can add to, and that you can access using an application that was stored on the server, but you can get it onto your portable device, and you can access that library. And that's completely, it's a different paradigm than what existed in 2000. It is an inventive concept. Looking at it from the standpoint of preemption, it does not preempt all ways of listening to music on your portable player. It doesn't preempt the things I mentioned, using CDs or other removable media or storing it on your device. It doesn't preempt that. Even now, you could still stream audio to a smartphone and not infringe these claims. Amazon could do that, but they don't want to do that. They want to set up a system as claimed, because it's a lot better than just streaming whatever content as opposed to your personal library. What would be the way that they would set up a downloadable app that would accept data over the Internet that would provide content? What is the way they would do that that wouldn't infringe? If you were just streaming. If you were just saying, well, you can access... When you say just streaming, I mean, I go to the Internet, I have an app on my phone, I go to the Internet, I pull up a song, and I play the song. Are you saying that's just streaming, that doesn't infringe? Yeah, if there's absolutely no customized interface or library of any kind, it's going to... There's a library, let's say, that some service provider has, which I go to, and I pull up the song. Why doesn't that infringe your patent? Well, you have to... Now we're trying to answer infringement questions. Well, but it's actually answering a preemption question, because if the answer is anything like that would infringe, then you've got a pretty broad patent. But that's not what I said. I know it isn't, but I'm asking you to tell me whether my example would infringe. To the extent I understand it, no, it wouldn't. It wouldn't meet all the claim elements. What claim element would be missing? The customized user interface. Well, you haven't said that there was ever an application that was stored. I did say there was an application that was stored. And you can get it down on your phone. Yes. So you're going to remove that from the inventive concept and focus on the customized user interface that gives you access to a personalized library. All right. In your example, you didn't have either the customization or the personalization of the library. What is a personalized library in your understanding of that term? I'm sure it's for claim construction, but it has something to do with accessing your content. Like some of the claims, like I said, allow you to purchase content and add it to your library. All right. Thank you, Your Honor. Thank you. Thank you, Your Honor. May it please the Court, Dave Haddon for Amazon. The recognition that it would be cool to get your favorite music on a portable device is a wish. It's an aspiration. It is not an invention. An invention is a specific technical solution that allows that end to be achieved in some new or better way. There is no invention in this patent. You can look at beginning with the first sentence of the detailed description, and it's clear what they're claiming is an idea, and the idea is incredibly broad. I think the recognition that it would be cool to have access to your favorite music on a portable device probably goes back to Alexander's ragtime band on a wind-up phonograph. I agree, Your Honor. And there is no new technology in this patent that achieves that in any specific way. The patent itself says, and this is a column two in the first sentence of the detailed description, What I'm saying is there's more to what they're arguing than simply that statement. Well, their patent says the conceptual groundwork for the present invention includes wirelessly communicating selective information to an electronic device. They're claiming that is their invention. But that is just an abstract idea. That is an aspiration. It is something that would be cool to have, but to have a patent, you have to have a specific way to do it. And there's no such specific way disclosed in this patent. And it's clear if you look at figure one, which purports to show the invention, and all figure one is is four boxes, and they're described in the most generic, functional way possible. You have 105, which is a storage device, which could be anything that stores information. It could be any disk, any memory, any database. Then you have digital engine 101, which is any computer that manages that storage in some digital form. So that's any server that manages any stored information. And then connected to digital engine is communication engine, which is anything that transmits information wirelessly. The patent says it can be anything. It can be a satellite system, it can be a cellular network, it can be an AM radio transmitter. And finally, you have a device that receives it, a handheld device. Any system that transmits information wirelessly can be described with those four functional boxes. This is indistinguishable from TLI. TLI is this case in reverse. In TLI, you have a storage at a server. It catalogs and stores digital images. Those digital images are received over a communication network from a handheld device. It's exactly the same four functional components here. And they describe any system that communicates information wirelessly. That's like saying I'm claiming an airplane that flies at the speed of sound and I draw a picture with wings and a jet engine. That doesn't get you there. That is just any generic description of such a system. And as the Court found in TLI, that's an abstract idea. That's not an invention. Now, if we go on and look at how the claims describe it, it's no different. In their complaint, Affinity asserted claims 1 and 14. And if we look at 1 and 14... This brings us to the question I ask you, Your Opposing Counsel, which claims are actually... 1 and 14 were identified specifically in the complaint. They were asserted. No. That's wrong. It's not in the complaint. No. The complaint says you infringed at least claims 1 and 14. And the focus... At least? Yeah. There was no... It was not exhaustive. But those are the only two they identified. But the district court said that the claim 14 was representative of, I think he said all claims, of the other claims. It is at least representative of the asserted claims. 1 and 14 are sort of counterparts. But if you look at 14, what does it actually describe? All it describes is a network-based media management system, which is a generic server that provides the conventional functionality, as in TLI, of maintaining and presenting information to a user. And then there is this collection of instructions, which is any software that allows a user on their device to see and select information. And then there is this network-based delivery system, which, again, is anything that will find that information and get it to your device. Those are completely generic functional components. Those are essentially the four boxes in Figure 1 and nothing more. Now, with respect to claim 15, which counsel talked about as somehow adding something, well, if we look at what 15 actually says, it says the media system of 14, wherein the network-based delivery resource is configured to recognize the request indicates a need for wireless delivery of the content. If you have a wireless delivery system, that provides nothing, right? You know that it needs to be delivered wirelessly. And then it says, and to respond to the request by delivering the portion of content at a given communication rate. Any communication is at some rate, right? This doesn't limit 14 in any way. Any wireless communication of content from the server to hand out is going to satisfy claim 15. So there is no how here, as Your Honor asked, right? All this patent says is get music from a server that a user wants to some device using any means you can think of. Present or future. How about the limitation of the means to downloading remotely on a handheld device? So there is actually no claim limit in this patent about downloading the application itself. The other one specifically is downloadable, right? But it struck me that the reference at least in 15 to the wireless delivery of content suggests downloadable. I think it's talking about downloading the music itself. As opposed to the app. As opposed to the app. Right. But once you're going to download information, what's the difference between downloading music or an application? Right. But how about the notion that the argument that's made on the other side is that the whole notion of downloading music wirelessly, streaming, whatever, was never anticipated prior to this patent? Well, that comes back to the wish, right? You can't say in the year 2000 that no teenager wished they could have the music they want on their phone. Right. If that isn't enough, those teenagers invented this patent because there's nothing else in this patent. Right. But we know you don't have to have a circuit diagram of a downloadable app in order to get a patent. There's a certain degree of generality that you can use in a patent and then you work out the specific circuits later. My question is, is there enough here that indicates a departure from just the pure aspirational I would love to be able to listen to music on my phone versus giving you some degree of specificity with how you get there? Yeah, there isn't, Your Honor. Answer that out for me. Yeah, the answer is figure one, right? Figure one, which looks like something I could draw on the back of a napkin, is four boxes. And they say the minimal things in the most general way that are required to get music from a server to a device. Figure one, I agree with you, is not very informative. But figure four... Well, let's look at figure four. So figure four purportedly shows this customized user interface. Right. Which Affinity has said is the inventive contribution that gets them out of step two. Right. But what does figure four show? Figure four shows a standard web page, right? And the patent describes it as being displayed in a standard browser. And what is the customizable user interface here? Well, there's a button that says user-selected playlists. So if the idea is that you could pick your favorite songs and then somehow get a list of them, that is not a technological solution to anything. Right. That is just saying at some point I go on the website, I select or buy the songs I want, and later they'll show them to me again. That is... And I'm taking that from figure four because there's no actual description and specification of anything else. Right. The customized user interface is just that, those two words. There's no description of how it works. There's no description of how it's customized. I mean, this is... Your Honor mentioned internet patents, right? This is internet patents or intellectual ventures, right? You try to claim an interactive, customized user interface that somehow gives you the information you want. That was the claim in intellectual ventures. But there was no implementation of how that worked. There was no description of how this software brain, as it was called in that case, selected the information for you. And there's no description in this patent at all. There is this one figure. If we aren't sort of wandering, as Mr. Morton suggested, over into the territory that belongs to Section 112. I don't think so, Your Honor, because I think you're... And we can put you in our brief. Your observation is correct. A patent is to an abstract idea where you are claiming the problem and just saying, I solved it. And that's what they're doing here. They're saying, general problem, it'd be cool to have personalized music on a device. Here, I solved it. There's no description of how this customized user interface is implemented, anything novel or new about it. They show a standard web page with a button that says, User Selected Playlist. That is just claiming, push this button, get your favorite music on your device. That is nothing more than the teenagers were doing in 99. And the court has already held, in both Internet patents and intellectual ventures, that just saying you're going to have a customized user interface or an intelligent user interface is not an inventive concept. It has to at least be some implementation that describes how that software works to do whatever customization you're claiming. And it's not here. If we go to preemption, and I think that kind of puts this along with figure one, this patent in context. What is the proportionality? The proportionality, what did we get as the public? What is added to our store of knowledge from this patent compared with what they're trying to take from the public? I read this patent and I see nothing that is added to our store of knowledge. But what are they trying to take? Every way that you can stream media, whether it's movies or video or anything else, to a wireless device that's selected by a user. Well, that brings us to my exchange with Mr. Morton, in which he was saying that no, this does not take anything approaching as broad a swath of... But if you read their brief, what do they say? They say you can still have a transistor radio and you can still go back 20 years and carry around your CD collection and a portable CD player. That's what they say you're left with. So if you read their papers, they're pretty clear that what they're taking away is every way to stream content to a wireless device. And this notion of whether it's personalized content or not, it's always going to be personalized content. You have some list of songs that you have rights to, that you have purchased. If you can see that list on a device and select from it, they're going to say that you are using their customized user interface. That's what they're accusing. So to say that, I don't know, if you got random music played to you, maybe it wouldn't be, but that's not clear either. Because if you select a channel, they'll say that is a customized user interface. Mr. Morton mentioned a personalized list. Right, but all that is is the list of songs you have rights to play. Is that what that means? Okay. So let me just, on the last point, Affinity Council raised Bascom. Bascom is inapplicable here, right? The issue in Bascom was there was a new way to filter internet content at the ISP by associating the user's IP address with an account with a specialized filter. There is no specific solution like that described in this pattern. The components that you see on Figure 1 are arranged in the most generic way possible, right? You have information, it's stored in storage, it's managed by a server, it's communicated by a wireless network to a handheld device. That is the arrangement of elements, both in the claims and in the spec, and it's completely conventional. It's the exact same components arranged in exactly the same way as in TLI or Cloud Satchel or many other cases that this court has ruled are completely abstract and don't get through Step 2. Unless there's anything else, I will make a statement. Thank you. Good morning for the fourth time, Your Honors. First on Step 1, again, Amazon has provided no limit to what can be found as an abstraction. They claim now it's, if I just say a problem and say I solved it, it's abstract. That would be no limit whatsoever, and you'd have abstract ideas. That's not what the Supreme Court intended. On Step 2, they again double down on the idea that this pattern is merely aspirational. I've asked the Court, how can something that's aspirational be routine and conventional as of 2000? The answer is it can't. Finally, we're here again on a Rule 12 motion, and it does feel to my client like an ambush, like there are so many issues that haven't been addressed. I believe the district courts need guidance, that they do not need to hurl themselves at the imponderable question of what is or is not an abstract idea outside of what the Supreme Court has given as definable categories at the Rule 12 stage. It can be decided, along with all the other issues, in a fair process where we'll know their non-infringement positions later in the case. This isn't the first case where there's been a 12B6 that didn't play. Ultramershal was one of those cases, correct? Certainly not. Certainly not the first case. I do submit that Ultramershal in the earlier cases had one point right. It very clearly said that this issue is going to involve underlying factual issues that need to be proven by clear and convincing evidence and ordinarily should not be addressed on Rule 12. If you read the Ultramershal 3 decision, it simply does not discuss the issue, doesn't mention it, and doesn't provide guidance to the Court for when it's appropriate. But there are a number of other, either 12C or 12B6 decisions that this Court has upheld, has affirmed. There certainly are, Your Honor. I'm not going to contest the fact that there are other cases. I don't think the question has been answered when it's appropriate, and some of those other cases involved either something clear in the specification or involved admissions of counsel, content extraction involved, admissions of counsel, as well as routine and conventional. I am certainly not admitting here today that the individual elements or the order combinations were routine and conventional in 2000. I don't think you can take anything from this argument, but we'll take that. Yes, Your Honor. Thank you. And on that note, thank you. We thank both counsel of the cases.